

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-17-00046-CV**

MARCUS HERNANDEZ AND                                    APPELLANTS
DIANE HERNANDEZ

V.

TRUCK INSURANCE EXCHANGE                                APPELLEES
AND TEAM HEALTH, INC.

----------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 342-283463-16

----------

## OPINION

----------

### I. Introduction

In this issue of first impression, which presents a legal scenario unlikely to be repeated, we are asked to decide whether the supreme court's opinion in *Phillips v. Bramlett* (*Phillips I*), 288 S.W.3d 876 (Tex. 2009), constitutes "a

unicorn crossbow," i.e., an item theoretically useful, but of no practical value,[1] to a personal injury plaintiff when the defendant surgeon surrenders his potential *Stowers* claim back to his malpractice insurer after a jury verdict in the plaintiff's favor exceeds the statutory cap on physician liability under article 4590i of the revised civil statutes.[2] Bound by supreme court precedent, we reverse the trial court's judgment, which dismissed Appellants' claim for want of jurisdiction in favor of Appellees Truck Health Insurance (Truck) and Team Health, Inc. (Team), and remand this case to the trial court for further proceedings.

## II. Background

In November 2001, Marcus Hernandez Jr. died from massive blood loss following a liver biopsy. Almost two years later, Appellants, Marcus's parents, filed a wrongful death action against both Dr. Hitesh B. Yagnik, M.D. and the hospital where their son died. *See Yagnik v. Hernandez*, No. 02-11-00510-CV, 2013 WL 1668304, at *1 (Tex. App.—Fort Worth Apr. 18, 2013, pet. denied) (mem. op.). The hospital settled prior to the first trial, which resulted in a hung jury, and on retrial a different jury awarded $2,679,000 to Appellants, which—

---

[1]We discovered this gem of a phrase in Appellants Marcus and Diane Hernandezes' summary judgment response, in which they argued that summary judgment against them would render *Phillips I* irrelevant.

[2]Article 4590i was repealed and replaced effective September 1, 2003, three days after Appellants filed their medical malpractice claim. *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 11.02, 1977 Tex. Gen. Laws 2039, 2052, *repealed by* Act of June 1, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.

after the trial court applied the statutory caps on medical negligence damages and accounted for the hospital's settlement—resulted in a judgment of $1,818,601.63 against Yagnik, from which he appealed. *Id.* Yagnik then released Truck, one of his insurance carriers, from any liability arising from its failure to settle the underlying lawsuit in exchange for Truck's agreement to post his supersedeas bond on appeal and to pay the resulting judgment if the trial court's judgment was affirmed on appeal.

We affirmed the trial court's judgment in 2013. *Id.* After the supreme court denied Yagnik's petition for review and motion for rehearing, our mandate issued on May 5, 2014.

Over a decade after they filed their original lawsuit, but less than two years after we affirmed the trial court's judgment and issued our mandate, Appellants sued Yagnik's insurance carriers[3] for the negligent failure to settle a claim within the insurance policy limits—traditionally known as a common law *Stowers* action[4]—seeking to collect the difference between the almost $2.7 million jury verdict and the amount of the trial court's judgment.[5]

---

[3]Appellants sought recovery from not only Appellees but also Farmers Insurance Exchange, Team Health Holdings, Inc., and Texas Medical Liability Trust. They dismissed their claims against Farmers Insurance Exchange, Team Health Holdings, Inc., and Texas Medical Liability Trust without prejudice in 2016. In its brief in this court, Team states that it "does not concede that it was or is an insurer or owed any . . . dut[ies]" to Appellants or to Yagnik.

[4]A *Stowers* action—so named for *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544, 547–48 (Tex. 1929)—is based on an insurer's common law tort duty to its insured to settle within policy limits when reasonably

3

Truck filed a plea to the jurisdiction, arguing that Appellants lacked standing to bring a direct action,[6] and Team filed a motion for summary judgment on the same basis. In support of their claim, Appellants expressly relied upon the supreme court's *Phillips I* opinion, asserting that the holding in *Phillips I* authorized them to bring their *Stowers* claim as a direct action.

Team also argued in its motion that because Appellants' *Stowers* claim was filed after article 4590i was repealed and replaced by civil practice and remedies code chapter 73 in 2003, there could be no *Stowers* liability against the insurers beyond the amount of the capped damages.[7]

---

prudent to do so. *See Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 776 (Tex. 2007). The duty is not activated by a settlement demand unless three prerequisites are met: (1) the claim against the insured is within the scope of coverage, (2) the demand is within policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept the demand, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *Id.* Appellants alleged in their pleadings that they had made several *Stowers* settlement demands, received by the insurers, for a settlement amount within Yagnik's insurance policy limits and that each demand had been rejected.

[5]Appellants sought more than $1.3 million as the "difference between the statutory physician's cap and the jury verdict," as well as exemplary damages for the insurers' gross negligence during the pendency of the underlying medical malpractice lawsuit.

[6]Truck filed a memorandum of law in support of its plea to the jurisdiction that it labeled alternatively as a motion for summary judgment.

[7]When article 4590i was repealed and replaced by civil practice and remedies code chapter 73, effective September 1, 2003, the law was changed to limit insurers' liability under a common law *Stowers* claim to that of the insured. *Compare* Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 11.02(c), 1977 Tex. Gen. Laws 2039, 2052, 2064, *repealed by* Act of June 1, 2003, 78th Leg., R.S.,

4

The trial court dismissed Appellants' claims against Truck and Team for lack of subject matter jurisdiction after granting Truck's plea to the jurisdiction and granting in part Team's summary judgment motion "to the extent that the motion was based upon Plaintiffs' lack of standing to pursue a direct statutory *Stowers* cause of action against Team Health, Inc." In its order, the trial court stated that in light of its ruling that it lacked jurisdiction over the *Stowers* lawsuit due to Appellants' lack of standing, it expressly made no ruling on any of the other grounds for summary judgment in Appellees' motions.

## III. Discussion

In four issues, Appellants argue that the trial court erred by concluding that they lacked standing because they have a direct *Stowers* cause of action and because their claims are not barred by settlement (under an equitable subrogation theory) or capped by the 2003 statute.[8]

---

ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884, *with* Tex. Civ. Prac. & Rem. Code Ann. § 74.303(d) (West 2017).

[8]The trial court's order dismissing Appellants' claim was based solely on their lack of standing to bring a direct statutory *Stowers* claim under article 4590i, section 11.02(c), but we nonetheless reach the remaining arguments because to do otherwise would likely require a subsequent appeal, wasting scarce judicial resources both in this court and in the trial court. *See Denton Cty. Elec. Co-op., Inc. v. Hackett*, 368 S.W.3d 765, 773 n.9 (Tex. App.—Fort Worth 2012, pet. denied) (reaching substantive legal issues instead of remanding for remedy of flawed order's technical error); *see also City of Gladewater v. Pike*, 727 S.W.2d 514, 518 (Tex. 1987) (noting the equitable maxim that a court should not require the doing of a useless thing).

## A. Standards of Review

Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 387 (Tex. App.—Fort Worth 2008, no pet.) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002)). Standing is implicit in the concept of subject matter jurisdiction, and whether a party has standing to maintain suit is a question of law. *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 850 (Tex. App.—Fort Worth 2005, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)); *see IT-Davy*, 74 S.W.3d at 855.

The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction, and we construe those pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Tex. Bay Cherry Hill, L.P.*, 257 S.W.3d at 387. If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.* at 387–88 (citing *Miranda*, 133 S.W.3d at 228; *Bland ISD v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). If the evidence creates a fact question regarding the jurisdictional issue, then the trial

court cannot grant the plea to the jurisdiction, and the fact question will be resolved by the factfinder. *Id.* at 388 (citing *Miranda*, 133 S.W.3d at 227–28; *Bland*, 34 S.W.3d at 555). If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, however, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* (citing *Miranda*, 133 S.W.3d at 227–28; *Bland*, 34 S.W.3d at 555).

We also review a summary judgment de novo. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

And as has frequently been iterated by this court and our supreme court, we review issues of statutory construction de novo, and in construing statutes, our primary objective is to give effect to the legislature's intent, relying on the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results. *Jack Cty. Appraisal Dist. v. Jack Cty. Hosp. Dist.*, 484 S.W.3d 228, 231–32 (Tex. App.—Fort Worth 2016, no pet.) (referencing *CHCA Woman's Hosp., L.P. v. Lidji*, 403 S.W.3d 228, 231 (Tex. 2013), and *Tex. Lottery Comm'n v. First*

7

*State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010)). We read statutes as a whole and interpret them to give effect to "every sentence, clause, and word" so that no part thereof will be rendered superfluous. *Id.* at 232 (quoting *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003)).

**B. Applicable Law**

We first review the pertinent statutes and cases, in addition to the law on standing, for context for the parties' arguments in the trial court and in their appellate briefs.

### 1. Article 4590i, section 11.02(c)

Former section 11.02(c) provided that the statutory cap on physician and other healthcare provider liability would not limit the liability of any insurer "where facts exist[ed] that would enable a party to invoke the common law theory of recovery commonly known in Texas as the 'Stowers Doctrine.'"[9] Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 11.02(c), 1977 Tex. Gen. Laws 2039, 2052, 2064, *repealed by* Act of June 1, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.

---

[9]The factors that trigger a common law *Stowers* claim are a claim against the insured within the scope of insurance coverage, a settlement demand within policy limits and with reasonable terms, and a failure to settle that results in an excess judgment against the insured. *See Mid-Continent Ins. Co.*, 236 S.W.3d at 776 ("*Stowers* is the only common law tort duty in the context of third party insurers responding to settlement demands."). Appellants argue that these factors are the trigger for strict liability to apply under section 11.02(c).

## 2. Civil Practice & Remedies Code Section 74.303(d)

The *Stowers* exception in section 11.02(c) was not carried forward when article 4590i was repealed. Rather, section 11.02(c) was replaced by civil practice and remedies code section 74.303, which expressly provides that an insurer *can* use the statutory physician's cap to limit its liability. *See* Act of June 1, 2003, 78th Leg., R.S., ch. 204, § 10.01, sec. 74.303(d), 2003 Tex. Gen. Laws 847, 874–75 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.303(d) (West 2017)). Section 74.303(d) states, "The liability of any insurer under the common law theory of recovery commonly known in Texas as the 'Stowers Doctrine' shall not exceed the liability of the insured." Tex. Civ. Prac. & Rem. Code Ann. § 74.303(d).

## 3. 2003 Enabling Statute

The 2003 enabling provision states that most of chapter 204's effective date would be September 1, 2003,[10] and that it would not apply to actions filed prior to that date:

> [e]xcept as otherwise provided in this section or by a specific provision in an article [not applicable here], this Act applies only to an action filed on or after the effective date of this Act. An action filed before the effective date of this Act, including an action filed before that date in which a party is joined or designated after that

---

[10]Certain provisions of chapter 204 not at issue here had other effective dates—article 17 ("Limitations in Civil Actions of Liabilities Relating to Certain Mergers or Consolidations"), for example, had an immediate effective date subject to certain voting conditions, and some of the other articles would apply to actions filed on or after July 1, 2003. *See* Act of June 1, 2003, 78th Leg., R.S., ch. 204, §§ 17.01, 23.02(a)–(c), 2003 Tex. Gen. Laws at 892, 898–99.

9

date, is governed by the law in effect immediately before the change in law made by this Act, and that law is continued in effect for that purpose.

Act of June 1, 2003, 78th Leg., R.S., ch. 204, § 23.02(a), (d), 2003 Tex. Gen. Laws 847, 898–99.  In addition to health care liability claims, chapter 204 addressed the reform of "certain procedures and remedies in civil actions," including, among other things, class actions, settlement, venue, forum non conveniens, proportionate responsibility, products liability, interest, appeal bonds, seat belt evidence, claims against governmental employees or volunteers, damages, and the liability of volunteer fire departments and volunteer fire fighters.  *See id.* arts. 1–22, 2003 Tex. Gen. Laws at 847–98.  However, it did not directly address *Stowers* other than to limit insurers' liability to the physician cap as it pertained to common law claims.  That is, the new legislation ranged broadly over a number of topics but neither expressly identified whether a statutory *Stowers* cause of action had been created under former article 4590i nor whether such a cause of action was revoked by article 4590i's repeal and the enactment of chapter 74 of the civil practice and remedies code.

### 4.  *Phillips v. Bramlett* (*Phillips I*), 288 S.W.3d 876 (Tex. 2009).

Six years after the 2003 enactment, the supreme court construed article 4590i's *Stowers* exception in medical malpractice actions in a novel way.  In a 5–4 split decision, the court held that the *Stowers* exception functions in a manner akin to equitable subrogation, "put[ting] the injured third party in the shoes of the insured to the extent the cap eliminates the insured's incentive to enforce the

10

insurer's duty to settle with reasonable care." 288 S.W.3d at 882. The court explained that when insurance coverage was below the cap, the *Stowers*-exception claim could be shared by the insured physican and injured third party because both would potentially have excess claims, but when insurance coverage rose above the cap,[11] the physician would be fully protected, so only the injured third party would have the incentive to pursue the statutory *Stowers* exception claim. *Id.*

Pursuant to this construction, the supreme court instructed that a judgment against a physician should conform to the physician cap and that a subsequent suit would be available against the insurer under the section 11.02(c) *Stowers* exception. *Id.* at 882; *see id.* at 884–85 (O'Neill, J., dissenting) (critiquing the majority's analysis as incorrectly construing "the statute to grant the plaintiff in the underlying malpractice suit a claim for equitable subrogation against the insurer who is negligent in refusing to settle" and as incorrectly relying on the idea that the legislature "must have intended to tie *Stowers* liability against physicians' insurers to the jury's verdict rather than the court's judgment").

The court revisited this issue again in a subsequent appeal that addressed, among other things, whether postjudgment interest should be calculated from the date of the trial court's first judgment or the date of the judgment that the trial court entered following the supreme court's remand. *Phillips v. Bramlett*

---

[11]The court construed the "where facts exist" portion of former section 11.02(c) to refer to the jury's verdict for purposes of determining whether excess liability existed for a *Stowers* claim. *Id.* at 881 n.6.

(*Phillips II*), 407 S.W.3d 229, 231 (Tex. 2013) (observing that "[w]hen the life cycle of a judgment extends beyond an initial appeal, courts often face unique or unsettled jurisdictional and procedural issues"). In *Phillips II*, the court observed that the determination necessary to trigger the *Stowers* exception to article 4590i's damages cap is whether "[f]acts exist to enable a party to invoke the common law theory of recovery known as the 'Stowers Doctrine.'" *Id.* at 232 n.5. However, the court declined to address whether the facts "could support a subsequent *Stowers* claim against Phillips's insurer," observing that the issue was not before it. *Id.* It nonetheless stated that as to *Phillips I*, "this language in our opinion relates to how trial courts should apply section 11.02 of former article 4590i in the first instance: 'both the statutory cap and its exception can be applied as written by conforming the judgment against the physician to section 11.02(a)'s cap and reserving for another case any suit against the insurer under section 11.02(c)'s Stowers exception.'" *Id.* at 238 n.7 (quoting *Phillips I*, 288 S.W.3d at 882).

5. ***Bramlett v. Medical Protective Co. of Ft. Wayne* (*Bramlett I*), 855 F. Supp. 2d 615 (N.D. Tex. 2012).**

In 2012, Judge Sidney A. Fitzwater, a federal district court judge, interpreted *Phillips I*. *Bramlett I*, 855 F. Supp. 2d at 615–16. In his opinion, he noted that *Phillips I* was "at times difficult to comprehend," having "perplexed four dissenting justices as to its reasoning and effect." *Id.* at 621. Nevertheless, after studying the language and reasoning of the *Phillips I* majority opinion, he

concluded that it could "only reasonably be understood as interpreting § 11.02(c) to grant an injured third party a direct cause of action against the physician's insurer" when facts exist "that would allow a party to invoke the *Stowers* doctrine." *Id.* at 621–22, 625.[12] Thus, an injured third party would be allowed "to recover from the insurer the difference between the jury verdict and what would otherwise have been recoverable" under the physician liability cap. *Id.* at 622, 625. Judge Fitzwater reasoned that because the supreme court's focus was on maintaining incentives for reasonable settlement, it had made certain that the insurer would have an incentive to reasonably settle, regardless of whether insurance coverage was above or below the cap, "[b]y interpreting § 11.02(c) as creating a direct cause of action for injured third parties when *Stowers* facts exist." *Id.* at 623.

Judge Fitzwater went on to observe that while the supreme court analogized to equitable subrogation, the section 11.02(c) exception claim did not function like an equitable subrogation claim because, whereas an equitable subrogation claim only allows a third party to recover to the same extent as the party into whose shoes he steps, "there will be instances in which there is no claim for the injured third party and the insured physician to 'share'." *Id.* at 623–24 (quoting *Phillips I*, 288 S.W.3d at 882). Viewed as a direct action, the statutory *Stowers* exception claim provided the physician a common law *Stowers*

---

[12]While we are not bound by Judge Fitzwater's decision, we find his reasoning compelling.

claim for his excess liability up to the physician liability cap and provided the injured third party a claim for the difference between the physician liability cap and the jury verdict.[13] *Id.* at 624. To recover on the claim, the injured third party would have to prove that the physician's insurer breached its *Stowers* duty.[14] *Id.* at 624 n.16.

---

[13]During the hearing on Truck's and Team's motions, the trial court also expressed frustration with regard to the *Phillips I* opinion and three prior supreme court opinions—*Dairyland County Mutual Insurance Co. of Texas v. Childress*, 650 S.W.2d 770 (Tex. 1983), *Allstate Insurance Co. v. Watson*, 876 S.W.2d 145 (Tex. 1994) (op. on reh'g), and *State Farm Mutual Automobile Insurance Co. v. Matlock*, 462 S.W.2d 277 (Tex. 1970) (op. on reh'g)—stating,

> *Phillips* doesn't overrule *Allstate v. Watson*; doesn't -- doesn't even address *Dairyland*; and those are the two instances where you actually have the issue of whether or not there's a direct action by a third-party personal injury claimant against the liability carrier for a personal injury defendant, whether it be a malpractice or whether it be a car wreck case, okay?
>
> The only other instance where the Court has actually created a direct action is *State Farm v. Matlock* in the uninsured motorist coverage issue. And that has created a nightmare . . . .
>
> . . . .
>
> . . . And *Matlock*, the Supreme Court basically, without any citation to authority, decided, you know, ["]We think it's probably a good idea for a direct action, even though Texas doesn't allow a direct action in common law personal injury cases.["] So -- and that's been personal pet peeve of mine, shall we say.

[14]Truck describes the "inextricable dilemma" for insurers produced by *Phillips I* and *Bramlett I* as follows:

> The availability of a direct cause of action necessarily means that the insurer has a duty to its insured, but would also have a duty to the tort plaintiff.

14

## 6. Standing

To establish common law standing, a plaintiff must show both that he has suffered a distinct injury and that there is a real controversy between the parties that the judicial declaration sought will actually resolve. *Everett*, 178 S.W.3d at 850 (citing *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001)). But the legislature may exempt litigants from the common law injury requirement, making the statute itself the proper analytical framework to determine standing. *Id.* at 850–51. For statutory standing to apply, the plaintiff must allege and show how he has been injured or wronged within the parameters of the statutory language. *Id.* at 851. In *Everett*, we explained that the common law standing rules apply except when standing is statutorily conferred. *Id.* at 850; *see also Marauder Corp. v. Beall*, 301 S.W.3d 817, 820 (Tex. App.—Dallas 2009, no pet.) ("The standing analysis begins and ends with the statute itself.").

---

That duty would necessarily create a "Catch-22" for the insurer because the interests of its insured and the interests of the tort claimant are not aligned and cannot be aligned. If a proper *Stowers* demand within limits is made, under *Bramlett*, the insurer would be forced at that point not only to consider the insured's interest, but [also] that of the tort claimant. The insurer then [loses] its incentive to make any sort of agreement because the agreement would have to be in the best interest of the insured and the tort claimant against whom the insurer is defending its insured. If the insurer's exposure is above the *Stowers* exposure, the insurer's decisions regarding the defense of its insured are necessarily impacted. The purpose of the *Stowers* doctrine in the eighty-eight years of its existence has always been to protect the insured. The duty to an insured to settle under *Stowers* cannot be workable if the insurer must also consider the interests of the tort claimant and the potential verdict.

15

## C. Motions and Responses

In the trial court, Truck argued that Appellants had no standing because they did not have a direct statutory *Stowers* cause of action, an assigned *Stowers* claim from Yagnik, or a turnover order entitling them to Yagnik's *Stowers* claim. Specifically, Truck argued that a *Stowers* action may be brought by a judgment creditor only after a turnover proceeding or a valid assignment and that otherwise, the judgment creditor lacks standing to sue the insurer because there is no tort duty of an insurer to a third party, relying on *Hernandez v. Great American Insurance Co. of New York*, 464 S.W.2d 91, 94 (Tex. 1971).[15] Truck labeled as dicta the discussion in *Phillips I* of an insurer's potential liability under the statute,[16] vehemently disagreed with Judge Fitzwater's *Bramlett I* opinion,

---

[15]In *Great American Insurance Co.*, a case involving a common law *Stowers* claim related to an underlying automobile accident, the supreme court eliminated the requirement in Texas law that the insured pay some portion of the judgment against him before bringing suit for reimbursement against the insurer. 464 S.W.2d at 92 (eliminating the prepayment requirement to allow suit from the time liability is fixed by final judgment). In that case, decided almost 40 years before *Philips I*, the supreme court noted, "The tort of the insurer in mismanaging the defense of the insured in the first case is harmful to the insured alone." *Id.* at 94.

[16]Judge Fitzwater addressed the dicta argument in *Bramlett I*, distinguishing between obiter dictum—a judicial statement made in passing—and judicial dictum, "which is 'articulated very deliberately after mature consideration.'" *Bramlett I*, 855 F. Supp. 2d at 623 n.14 (quoting *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007)). That court concluded, as we do, that the discussion of the *Stowers* exception claim in *Phillips I* was "articulated very deliberately after mature consideration," that it was "integral to the court's reasoning and to its rejection of the interpretations of § 11.02 found in *Welch* [*v. McLean*, 191 S.W.3d 147 (Tex. App.—Fort Worth 2005) (op. on reh'g), *overruled by Phillips I*, 288 S.W.3d at 879–81, 883] and

16

and asserted that there is no such thing as a direct *Stowers* action by a third-party plaintiff. Accordingly, Truck claimed, because Appellants lacked either a turnover order or an assignment from Yagnik, they had no standing to bring a *Stowers* action, *Bramlett I* and *Phillips I* notwithstanding. Truck further argued that to the extent that Appellants could bring a *Stowers* claim via the principles of equitable subrogation, Yagnik's claim could not be pursued because the excess judgment against him had been paid upon becoming final in 2014 and Yagnik had released Truck from any claims he might have had against Truck, leaving nothing to subrogate.

Team likewise argued that absent an assignment from Yagnik or a turnover order, Appellants could not "otherwise establish standing to bring a *Stowers* action against" it. Team also argued that because Appellants did not file their current action until January 26, 2016, and because that action was wholly separate and apart from their underlying claim, Appellants were barred by civil practice and remedies code section 74.303(d) from pursuing any excess liability beyond the statutory cap applicable to Yagnik. Thus, according to Team, Appellants' judgment had been satisfied such that Appellants had no damages.

Appellants filed a joint response to Truck and Team's motions in which they acknowledged that they had no turnover order or assignment from Yagnik

---

*Phillips* [*v. Bramlett*, 258 S.W.3d 158 (Tex. App.—Amarillo 2007), *rev'd*, *Phillips I*, 288 S.W.3d at 883]" and that it was therefore obligated to follow the supreme court's interpretation of section 11.02(c). *See id.*

17

but asserted that they had brought their action as a direct statutory *Stowers* claim against the insurers pursuant to *Phillips I* and *Bramlett I*. Appellants argued that Truck entered a settlement agreement with Yagnik "in an attempt to circumvent" Appellants' right to recovery, pointing out that if Yagnik had no *Stowers* claim, then the release he signed with his insurers would fail for lack of consideration.

Appellants also argued that this situation is why the *Phillips I* court said that the direct claim was *akin* to equitable subrogation—not that it actually *was* an equitable subrogation claim. *See Phillips I*, 288 S.W.3d at 882 ("Similarly, the Stowers exception to the cap is *like* this right to equitable subrogation. It puts the injured third party in the shoes of the insured to the extent the cap eliminates the insured's incentive to enforce the insurer's duty to settle with reasonable care." (emphasis added)); *see also Bramlett I*, 855 F. Supp. 2d at 624–25. Their direct-claim argument went to both Truck's and Team's motions.

As to Team's separate summary judgment argument on 2003's civil practice and remedies code chapter 74 enactment (hereinafter, the 2003 statute), Appellants responded that the underlying suit that gave rise to their direct *Stowers* exception claim was filed on August 29, 2003, and was based on events that occurred before the statute's September 1, 2003 effective date, preventing the new statute's application to their claim. Appellants stated, "It beggars belief to think the Supreme Court decided *Phillips* [in 2009] in a way giving rise to a claim, but that it did not observe such a claim could never be brought because it would be precluded by the 2003 repeal of the MLIIA," particularly since a

18

claimant cannot determine whether a *Stowers* case exists until a jury verdict is rendered. They pointed to "long-settled law that a *Stowers* lawsuit need not be brought until after the suit from which it derives . . . is final," citing *Street v. Honorable Second Court of Appeals*, 756 S.W.2d 299, 301–02 (Tex. 1988) (orig. proceeding). To rule in Team's favor on that argument, they argued, would render the supreme court's decision in *Phillips* "a unicorn crossbow—theoretically useful, but of no practical value."

Appellants further argued that the 2003 statute did not govern their claim because Appellees are not health care providers and the claim is not a health care liability claim. According to Appellants, the 2003 statute governs only health care liability claims, not *Stowers* claims, that are filed after September 1, 2003. And they contended that they had been damaged "the entire amount of the verdict against the insured that ha[d] not already been paid, plus interest."

Team replied that the plain language of the 2003 enabling statute encompassed Appellants' claim because the statute applies to an "action," not just a "health care liability claim," essentially overruling the supreme court's 2009 holding in *Phillips I* for actions filed after September 1, 2003. Team further argued that Appellants should have brought their *Stowers* claim in the underlying action by adding Team to the case once the trial court entered a judgment applying the healthcare liability caps.

## D. The Parties' Arguments

In their first two issues, Appellants argue that the trial court erred by concluding that they lacked standing because their claim was neither a common law claim nor an equitable-subrogation-based claim but rather a direct statutory claim. In their third and fourth issues, Appellants argue that their claims are not capped by the 2003 statute because that statute is a replacement, not an amendment, that the 2003 statute has no effect on claims that are not brought under the common law *Stowers* doctrine, and that they are therefore entitled to money damages for the difference between the capped judgment and the verdict.

Truck responds that the trial court properly granted its plea to the jurisdiction because Appellants have no statutory standing under former article 4590i, section 11.02(c), to bring a *Stowers* action directly against Truck for amounts in excess of a judgment that was fully paid.[17] *But see Bramlett v. Med. Protective Co. of Ft. Wayne, Ind.* (*Bramlett II*), No. 3:10-CV-2048-D, 2013 WL 796725, at \*7 (N.D. Tex. Mar. 5, 2013) ("MedPro's payment of the judgment is not controlling because, if plaintiffs prove their *Stowers* claim, they are entitled to recover up to the amount of the jury verdict, not the judgment amount."). Truck directs us to insurance code section 541.151[18] and finance code section

---

[17]In its brief, Team adopted Truck's argument and authorities on this issue.

[18]Insurance code section 541.151, "Private Action for Damages Authorized," states that a "person who sustains actual damages may bring an action against another person for those damages" that are caused by the other person's engaging in an act or practice that is defined by chapter 541,

20

392.403[19] as examples of statutory grants of standing and to business and commerce code section 106.008[20] as an example of when standing is not granted. Team contends that the 2003 statute applies to Appellants' claims, which they filed in a separate 2016 lawsuit, and that Appellants have therefore received the full compensation to which they are entitled under applicable law with regard to Team.

Appellants counter that the 2003 statute applies to health care liability lawsuits filed after September 1, 2003, and to common law claims but that the instant case is not a health care liability lawsuit or a common law claim and that Appellees' arguments would require us to ignore both *Phillips I* and *Bramlett I*.

### E. Analysis

We agree with Appellants that we are not at liberty to ignore *Phillips I*. And we also agree with Judge Fitzwater's characterization of *Phillips I* as "difficult to

---

subchapter B as an unfair method of competition or an unfair or deceptive act or practice in the business of insurance or that is specifically enumerated in business and commerce code section 17.46(b) as an unlawful deceptive trade practice if the person bringing the action relied on the act or practice to his detriment. Tex. Ins. Code Ann. § 541.151 (West 2009).

[19]Finance code section 392.403, "Civil Remedies," states, in pertinent part, that "[a] person may sue for: (1) injunctive relief to prevent or restrain a violation of this chapter [on Debt Collection]; and (2) actual damages sustained as a result of a violation of this chapter," and if the plaintiff successfully maintains the action, he or she is also entitled to attorney's fees reasonably related to the amount of work performed or costs. Tex. Fin. Code Ann. § 392.403(a)–(b) (West 2016).

[20]Business and commerce code section 106.008, "No Private Right of Action," states, "This chapter ["Internet Dating Safety Act"] does not create a private right of action." Tex. Bus. & Com. Code Ann. § 106.008 (West 2015).

21

comprehend" and "perplex[ing]," *Bramlett I*, 855 F. Supp. 2d at 621, and find his

analysis instructive. Judge Fitzwater read *Phillips I* as acknowledging a

legislatively-created direct claim for injured third parties via section 11.02(c). *Id.*

at 622. *Compare* Tex. Ins. Code Ann. § 541.151, *and* Tex. Fin. Code Ann.

§ 392.403, *with Dairyland*, 650 S.W.2d at 775–76 (stating that "[t]here is no

question in our minds that the compulsory insurance requirement of the Texas

motor vehicle safety laws implies that all potential claimants for damages

resulting from automobile accidents are intended as beneficiaries of the

statutorily required automobile liability coverage" and thus holding that injured

third-party plaintiffs could obtain both damages and attorney's fees under the

insured's contract with the insurer). We agree. Because *Phillips I* acknowledged

a direct claim, and because we are bound by the supreme court's precedent, we

hold that Appellants' claims are not barred by Yagnik's settlement with his

insurers, and we sustain their second issue.[21]  *See Robinson v. Home Owners*

---

[21]Ignoring our precedential constraints as an intermediate appellate court, Truck directs us to the words of former United States Supreme Court Justice Felix Frankfurter with regard to statutory construction to remind us that

> *[Courts] are under the constraints imposed by the judicial function in our democratic society . . . . [T]he function in construing a statute is to ascertain the meaning of words used by the legislature. To go beyond it is to usurp a power which our democracy has lodged in its elected legislature . . . . A judge must not rewrite a statute, neither to enlarge nor to contract it.*

*In re P.D.M.*, 117 S.W.3d 453, 465 (Tex. App.—Fort Worth 2003, pet. denied) (Cayce, C.J., dissenting) (quoting Record of the Association of the Bar of the City of New York 213 (1947), *reprinted in Courts, Judges, and Politics* 414 (Walter F.

*Mgmt. Enters., Inc.*, No. 02-16-00380-CV, 2018 WL 1865799, at *11 (Tex. App.—

Fort Worth Apr. 19, 2018, no pet. h.) ("'[I]t is not the function of a court of appeals

to abrogate or modify established precedent.'" (quoting *Lubbock Cty. v.*

*Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002))).

Pursuant to this acknowledgment by the supreme court in *Phillips I*, if

Appellants' claims are not barred by the 2003 enactment, then Appellants can

sue for damages amounting to the difference between the capped judgment and

the verdict.[22]

As interpreted by the supreme court, section 11.02(c) required the facts

that give rise to a common law *Stowers* claim as a trigger for a statutory *Stowers*-

based cause of action for "a party," while section 74.303(d) limits an insurer's

liability "under the common law [*Stowers*] theory of recovery" but says nothing

about a statutory cause of action. Accordingly, we agree with Appellants'

Murphy & C. Herman Pritchett, eds., 2d ed.1974)). But in *Phillips I*, which issued in 2009, six years after article 4590i was repealed, the supreme court essentially created a cause of action for third parties injured by medical malpractice by reading its own analysis into section 11.02(c)'s text, creating a historical hybrid of sorts—an exceptional case for exceptional circumstances in a manner similar to its action in *Dairyland*. *Phillips I*, 288 S.W.3d at 882; *see also Dairyland*, 650 S.W.2d at 775–76 (holding all potential claimants for automobile accident damages are intended beneficiaries of statutorily required automobile liability coverage).

[22]Truck argues that to rule in Appellants' favor departs from any traditional measure of actual liability and creates an inconsistent right in law with regard to an insurer's duties. Nevertheless, we are constrained by the supreme court precedent that binds us. *See Bramlett I*, 855 F. Supp. 2d at 623 n.14 (explaining that to the extent the supreme court's discussion of the statutory *Stowers* exception in *Phillips I* is dicta, it is judicial dicta).

contention that these provisions do not match and that section 74.303(d) therefore has no effect on their claim because section 11.02(c) is a statute-based *Stowers* claim, not a common law-based *Stowers* claim, and we sustain their third issue.

Further, while as a matter of statutory construction, we must presume that the legislature "'is aware of relevant case law when it enacts or modifies statutes,'" *Phillips II*, 407 S.W.3d at 241 (quoting *In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (orig. proceeding)), at the time that the legislature enacted chapter 74 of the civil practice and remedies code to replace former article 4590i, *Phillips I* was not yet a glimmer in the eye of Justice Medina, its author, and the legislature did not have the benefit of the court's interpretation of section 11.02(c)'s language. *Cf. id.* (presuming that when the legislature enacted finance code section 304.005 in 1999, it was aware of the court's interpretations of the word "judgment" in the predecessor statute and intended to convey a meaning consistent with the court's historic usage). While we presume that statutory language has been selected and used with care and that every word or phrase in a statute has been intentionally used with a meaning and a purpose, *see Allen*, 366 S.W.3d at 706, to apply 2003's statutory limitation here would render the supreme court's opinion a nullity when *Phillips I*, handed down six years after the statute was enacted, created a statutory cause of action that relates back to former article 4590i. *See Bramlett I*, 855 F. Supp. 2d at 621–22, 625 (interpreting *Phillips I* as granting an injured third party a direct cause of action against the

24

physician's insurer when *Stowers* facts exist as to a medical malpractice claim that accrued in 2002). As a lower court, we lack the authority to take such action.[23]

Section 11.02(c) does not specify a limitations period, but our supreme court has held that when a statute lacks an express limitations period, we must look to analogous causes of action for which an express limitations period is available either by statute or by case law. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 518 (Tex. 1998) (op. on reh'g). The limitations period for a common law *Stowers* cause of action is two years. *Street*, 756 S.W.2d at 301. Further, a traditional common law *Stowers* cause of action accrues, and limitations begins to run, when the trial court's power to alter the judgment has ended and execution on the judgment, if appealed, has not been superseded, or all appeals have been exhausted. *Id.* at 301–02 ("Regardless of whether the judgment is superseded, an insured who so wishes may still wait until the underlying action has been completely resolved before bringing a *Stowers* suit."); *see Bramlett II*, 2013 WL 796725, at *6 (observing that while Texas law permits an insured to bring a common law *Stowers* action as soon as there is a jury verdict exceeding policy limits, the claim does not accrue until the

---

[23]The responsibility for reconciling *Phillips I* with the 2003 statutory scheme and related public policy implications in this anomalous case (which is unlikely to be repeated) lies with our supreme court.

25

judgment is final because no valid public policy is served by forcing an insured to bring an action that may ultimately prove to be unnecessary).

Here, Yagnik appealed the judgment resulting from Appellants' August 2003 medical malpractice lawsuit, and his insurers superseded it. We affirmed the judgment in 2013; the supreme court denied petition for review on November 22, 2013, and denied rehearing of the petition for review on April 25, 2014; and our mandate issued on May 5, 2014. Accordingly, Appellants had until May 5, 2016, to file their statutory *Stowers* claim. *See Bramlett I*, 855 F. Supp. 2d at 621–22, 625; *see also Bramlett II*, 2013 WL 796725, at \*6. They filed their original petition on January 26, 2016. Because Appellants' claims are not time-barred or barred by the September 1, 2003 effective date of the 2003 statute, Appellants can pursue damages amounting to the difference between the capped judgment and the verdict, and we sustain their fourth issue.

Based on the supreme court's holding in *Phillips I*, as we have analyzed above, the trial court erred by concluding that Appellants lacked standing. Accordingly, we sustain their first issue.

## IV. Conclusion

Having sustained Appellants' four issues, we reverse the trial court's judgment and remand the case for further proceedings.

/s/ Bonnie Sudderth

BONNIE SUDDERTH
CHIEF JUSTICE

PANEL:  SUDDERTH, C.J.; GABRIEL and PITTMAN, JJ.

DELIVERED:  June 21, 2018