ACCEPTED
15-24-00074-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
2/27/2025 5:24 PM
CHRISTOPHER A. PRINE
CLERK

MICHELLE PIQUÉ, SHARON JOROLAN AND SHANNON HUGGINS

PO Box 533, Snook, Tx 77878 · 979-229-6658

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
2/27/2025 5:24:00 PM
CHRISTOPHER A. PRINE
Clerk

February 27, 2025

Christopher A. Prine
Clerk of the Court of Appeals
for the Fifteenth District
PO Box 12852
Austin, TX 78711

> RE: No. 15-24-00074-CV: *Jane Nelson in her Official Capacity as Secretary of State for the State of Texas v. Piqué et al.*, on appeal from the 201st Judicial District Court of Travis County, Texas

To The Honorable Court:

Appellees Michelle Piqué, Sharon Jorolan and Shannon Huggins are writing to request the Court take judicial notice of the following opinion issued on February 26, 2025, by the Honorable Judge Birdwell of the Court of Appeals for the Second District in Cause No. 02-23-00338 (Exhibit A), pursuant to Tex. R. Evid. 201. This opinion is relevant to the above referenced case and is not subject to reasonable dispute. This opinion is appropriate for judicial notice as it's source and accuracy cannot reasonably be questioned.

The appellees respectfully request that the court take judicial notice of the above referenced opinion and consider it in its rulings of this case. Thank you for your time and consideration.

Respectfully submitted,

*s/ Michelle Piqué*     *s/ Sharon Jorolan*     *s/ Shannon Huggins*
MICHELLE PIQUÉ    SHARON JOROLAN    SHANNON HUGGINS

*Pro Se Appellees*

# EXHIBIT A



## In the
## Court of Appeals
## Second Appellate District of Texas
## at Fort Worth

———————————————

No. 02-23-00338-CV

———————————————

SHARON P. JOROLAN, LOGAN B. YOUNG, MICHELLE PIQUE, MAURICE F. JOHNSON, PATRICIA ERWAY, AND LINCOLN ACHILLI, Appellants

V.

ANDY EADS, Appellee

---

On Appeal from the 481st District Court
Denton County, Texas
Trial Court No. 22-10692-481

---

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

In November 2022, voters approved a ballot measure—Denton County Transportation Bond Proposition A—authorizing the issuance of $650 million in general obligation bonds by Denton County for constructing, improving, repairing, and maintaining roads, bridges, and highways within the county. After the Denton County Clerk certified the results of the election favoring the measure, Appellants Sharon P. Jorolan, Logan B. Young, Michelle Pique, Maurice F. Johnson, Patricia Erway, and Lincoln Achilli timely filed an original petition asserting an election contest[1] against Appellee Andy Eads, *see* Tex. Elec. Code Ann. §§ 233.001–.014, who,

---

[1]"An election contest is a special proceeding created by the Legislature to provide a remedy for elections tainted by fraud, illegality or other irregularity." *Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999) (citing *De Shazo v. Webb*, 113 S.W.2d 519, 524 (Tex. 1938)); *see Duncan v. Willis*, 302 S.W.2d 627, 630–31 (Tex. 1957) ("Election contests are legislative and not judicial proceedings." (citing *De Shazo*, 113 S.W.2d at 522)). Except as otherwise specified, the Election Code confers the district court with exclusive original jurisdiction of an election contest. Tex. Elec. Code Ann. § 221.002(a). In considering an election contest, the district court's obligation is to determine "whether the outcome of the contested election, as shown by the final canvass, is not the true outcome" because (1) illegal votes were counted or (2) an election officer or other person officially involved in the administration of the election prevented eligible voters from voting, failed to count legal votes, or engaged in other fraud or illegal conduct or made a mistake. *Id.* § 221.003(a). An "illegal vote" is one that cannot be legally counted. *Id.* § 221.003(b). "An election contestant bears the burden of alleging and proving by clear and convincing evidence that (1) violations of the Election Code occurred, and (2) they materially affected the outcome of the election." *Medlin v. King*, No. 08-24-00001-CV, 2024 WL 3845970, at *3 (Tex. App.—El Paso Aug. 16, 2024, pets. denied) (citing *Willet v. Cole*, 249 S.W.3d 585, 589 & n.2 (Tex. App.—Waco 2008, no pet.) (acknowledging clear-and-convincing burden lacks basis in the Election Code but is instead a longstanding judge-made rule)). "The outcome of an election is 'materially affected' when a different and correct result

2

as Denton County Judge, was the presiding officer of the final canvassing authority for the election, *see id.* § 233.003(a)(1). Asserting standing as "qualified voters" pursuant to Section 233.002 of the Election Code,[2] Appellants alleged as the basis for their contest that the electronic voting system employed by the county for the election was not properly certified by the Secretary of State, arguing that the votes counted were illegal, the true outcome of the election was unascertainable, and the result is void as a matter of law. Judge Eads subsequently challenged the subject matter jurisdiction of the district court to adjudicate the contest on the grounds that (1) Appellants lacked standing due to the absence of any concrete, particularized injury distinct from the public at large, (2) they asserted their contest against a public official with no involvement in a certification process delegated exclusively by statute

___

would have been reached in the absence of the irregularities." *Willet*, 249 S.W.3d at 589.

[2]"One or more qualified voters of the territory covered by an election on a measure may contest the election." Tex. Elec. Code Ann. § 233.002. A "qualified voter" is one who meets the criteria set forth in Section 11.002 of the Election Code: an adult citizen of the United States, residing in the State of Texas, registered to vote in his or her precinct, and otherwise not disqualified from voting by mental incapacity or final felony conviction. *Id.* §§ 11.002–.003. A "measure" is "a question or proposal submitted in an election for an expression of the voters' will." *Id.* § 1.005(12). Any contest challenging the results of an election on a measure is to be filed in a district court with jurisdiction either "in Travis County if the contested election is statewide" or "in any county wholly or partly in the territory covered by the contested election if the election is less than statewide." *Id.* §§ 231.001–.002, 233.005. "The district judge shall decide the issues of fact in an election contest without a jury." *Id.* § 231.005. And, unless otherwise provided by the authorizing subtitle, "the rules governing civil suits in the district court apply to an election contest in the district court." *Id.* § 231.002.

to the Secretary of State, and (3) the electronic voting systems employed for the election had been properly certified by the Secretary of State. Because we conclude that, as qualified voters, Appellants possess statutory standing to prosecute an election contest against Judge Eads challenging the results of the transportation-bond election, even without demonstrating a concrete, particularized injury distinct from the public at large, we reverse the order of the district court granting his jurisdictional challenge.

## I. Findings of Fact and Conclusions of Law[3]

Although given the opportunity to amend their pleadings by the trial court, Appellants' allegations remained substantially the same, i.e., because the electronic voting system employed by Denton County for the transportation-bond election had not been properly certified by the Secretary of State, the votes counted were illegal, the true outcome of the election was unascertainable, and the result is void as a matter of law. The result of the election was that the transportation-bond proposition had been passed by the voters of Denton County by a 74% to 26% margin, with the votes officially counted in its favor numbering 229,420 to 80,176 votes against. At no time did any of the Appellants allege an injury or harm to themselves individually that was not also applicable to the voters of Denton County generally—at least those who joined them in voting against the proposition. On this basis, Judge Eads moved to

---

[3]The factual circumstances and procedural background dispositive of the issues presented by this appeal are largely uncontested. Accordingly, we will focus primarily on the trial court's findings of fact and conclusions of law after a brief discussion of the procedural presentation.

dismiss the contest pursuant to Rule 91a and, alternatively, a plea to the jurisdiction. He never contested the pleading that each and all of Appellants were "qualified voters" as contemplated by Section 233.002.

After the trial court conducted its hearing on Judge Eads's motion to dismiss and alternative plea to the jurisdiction, it entered an order dismissing the election contest for want of subject matter jurisdiction due to Appellants' lack of standing. Upon their request for findings of fact and conclusions of law, the trial court entered the following:

## FINDINGS OF FACT

The Court finds that the following facts are not disputed:

1. On November 8, 2022, Denton County Proposition A was on the General Election Ballot for consideration of every Denton County, Texas[,] voter.

2. Denton County Proposition A asked all voters to decide upon whether to be for or against **"THE ISSUANCE OF $650,000,000 GENERAL OBLIGATION BONDS FOR CONSTRUCTING, IMPROVING, REPAIRING AND MAINTAINING ROADS, BRIDGES AND HIGHWAYS WITHIN DENTON COUNTY, INCLUDING CITY, STATE AND COUNTY STREETS, ROADS, HIGHWAYS AND BRIDGES AND PARTICIPATION WITH FEDERAL, STATE AND LOCAL PUBLIC ENTITIES RELATED TO SUCH IMPROVEMENTS AND THE IMPOSITION OF A TAX SUFFICIENT TO PAY THE PRINCIPAL OF AND INTEREST ON THE BONDS."**

3. The results of the November 2022 election for Denton County Proposition A were 229,420 votes for the Proposition and 80,176 votes against the Proposition.

4. Denton County Proposition A was approved with 74.10% voting for and 25.90% voting against.

5. On November 22, 2022[,] the November 2022 General Election in Denton County was certified.

6. On December 15, 2022, Contestants filed their Original Petition Asserting an Election Contest against Denton County Proposition A.

7. On January 17, 2023, Contestants filed their First Amended Petition Asserting an Election Contest against Denton County Proposition A.

8. On August 3, 2023, Contestants filed their Second Amended Petition Asserting an Election Contest against Denton County Proposition A.

9. In all three Petitions[,] Contestants based their Election Contest on an argument that all 309,596 votes cast were illegal because the voting equipment used by Denton County in this election were not certified.

## CONCLUSIONS OF LAW

1. The Contestants lack standing to bring this contest, depriving the Court of subject matter jurisdiction.

2. Contestants did not allege a concrete injury, specific and particular to Contestants that could be redressed with a favorable decision by this Court.

3. Contestants lack standing because they did not allege some injury distinct from that sustained by the public at large.

4. Voting systems in the State of Texas are supervised and approved exclusively by the Secretary of State. *Texas Election Code Chapter 122.031*[.]

5. Contestants had the opportunity to amend their pleadings, and did amend its pleadings multiple times, yet failed to meet its burden to demonstrate subject matter jurisdiction.

6. Contestants had the opportunity to amend their pleadings, and did amend their pleadings multiple times, yet failed to state a viable claim that would give them standing to seek redress from this Court.

7. Any finding of fact that is a conclusion of law shall be deemed a conclusion of law.

Appellants timely filed a notice of appeal from the trial court's dismissal of their election contest.

## II. Analysis

Appellants appeal complaining that because Section 233.002 of the Election Code grants "qualified voters" standing to file election contests on measures without requiring a showing of a concrete, particularized injury distinct from the public at large, the district court erred by interpreting its language to interpose such a requirement. Judge Eads contends that standing for purposes of establishing subject matter jurisdiction in the district court requires a concrete, particularized injury distinct from the public at large and that, as a matter of constitutional imperative, both state and federal, the legislature may not lower this jurisdictional threshold by waiving such a showing for election contests. Because Article V, Section 8 of the Texas constitution has since 1891 extended the subject matter jurisdiction of district courts to election contests, and because thereafter the legislature has routinely authorized citizen and voter standing therefor by statute without a showing by the contestant of a concrete, particularized injury distinct from the public at large, we hold that the district court erred in dismissing Appellants' election contest for lack of standing.

## A. Standard of Review

"Whether a court has subject matter jurisdiction is a question of law." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). "The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction, as well as by other procedural vehicles, such as a motion for summary judgment." *Id.* at 554 (citation omitted); *see Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 694, 696 (Tex. 2021) (reviewing challenge to trial court's subject matter jurisdiction brought by Rule 91a motion to dismiss).

### 1. Rule 91a

Under Rule 91a, a party may move for dismissal on the ground that a cause of action has no basis in law or fact. Tex. R. Civ. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.* In ruling on a Rule 91a motion to dismiss, a court may not consider evidence but "must decide the motion based solely on the pleading of the cause of action, together with any [permitted] pleading exhibits." *Foster v. Foster*, No. 02-20-00327-CV, 2021 WL 2373329, at *2 (Tex. App.—Fort Worth June 10, 2021, pet. denied) (mem. op.) (quoting Tex. R. Civ. P. 91a.6). We review the merits of a Rule 91a ruling de novo;

8

whether a defendant is entitled to dismissal under the facts alleged is a legal question. *Id.* (first citing *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding); and then citing *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016)).

"In deciding a Rule 91a motion to dismiss, we construe the pleadings liberally in the plaintiff's favor, look to the plaintiff's intent, and accept as true the factual allegations in the pleadings to determine if the cause of action has a basis in law or fact." *Id.* at *3 (citing *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). We apply a fair notice standard under which the pleadings are sufficient if a cause of action can reasonably be inferred from the facts alleged. *Id.* "The dismissal grounds under Rule 91a have been analogized to a plea to the jurisdiction, which requires a court to determine whether the pleadings allege facts demonstrating jurisdiction." *Id.* (citing *Sanchez*, 494 S.W.3d at 724–25). When a lack of standing is the only basis for the trial court's dismissal, we limit our review to that ruling, even if the defendant asserted other, merits-based grounds for dismissal under Rule 91a. *See Data Foundry*, 620 S.W.3d at 699.

**2. Plea to the Jurisdiction**

A plea to the jurisdiction challenges a trial court's authority to exercise subject-matter jurisdiction over a claim or cause of action and "may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770–71 (Tex. 2018); *Ramsey v. Miller*, No. 02-22-00412-CV, 2023 WL

9

3645468, at *1 (Tex. App.—Fort Worth May 25, 2023, pet. denied) (mem. op.) (same). We review a trial court's grant of a plea to the jurisdiction de novo. *Miranda*, 133 S.W.3d at 226. In determining whether the plaintiff has met her burden of alleging facts that affirmatively establish the trial court's subject matter jurisdiction, we look to the allegations in the plaintiff's pleadings and construe them in her favor. *Id.* "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[']s jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency" and the plaintiff should be afforded the opportunity to amend. *Id.* at 226–27. Conversely, if the pleadings affirmatively negate the existence of jurisdiction, then the plea may be granted without allowing the plaintiff an opportunity to amend. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

If, however, the plea asserts an evidentiary challenge to the existence of jurisdictional facts, the standard of review is like that for a traditional motion for summary judgment. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Ramsey*, 2023 WL 3645468, at *1; *Sullivan v. City of Fort Worth*, No. 02-10-00223-CV, 2011 WL 1902018, at *2 (Tex. App.—Fort Worth May 19, 2011, pet. denied) (mem. op. on reh'g). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. If the movant satisfies his burden to establish that the trial court lacks jurisdiction, the nonmovant is then required to show that there is a

material fact question regarding the jurisdictional issue. *Id.* If the evidence raises such an issue, the plea cannot be granted, and a factfinder must resolve the issue. *Id.* at 227–28. Conversely, if the relevant evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Id.* at 228.

If the jurisdictional challenge involves the interpretation of statutory language, we review the trial court's interpretation de novo to ascertain and give effect to the legislature's intent. *Sullivan*, 2011 WL 1902018, at *5 (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008)). We interpret the statute according to the plain meaning of its words unless a contrary intention is evident from the context, or unless such an interpretation leads to an absurd result. *Id.*

As with a successful Rule 91a dismissal for want of jurisdiction, our review of a successful plea is limited to the jurisdictional issue; we may not address the merits if the trial court did not. *See Ramsey*, 2023 WL 3645468, at *2.

## B. Citizen or "Qualified Voter" Standing

We review standing employing the same standard by which we review subject-matter jurisdiction generally. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Standing is "implicit in the concept of subject matter jurisdiction" and is "essential to the authority of a court to decide a case." *Id.* at 443. Standing is never presumed, is not subject to waiver, and is subject to review for the first time on appeal. *Id.* at 443–45. "Standing to sue may be predicated upon either statutory or common law authority." *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 850 (Tex. App.—

11

Fort Worth 2005, no pet.) (citing *Williams v. Lara*, 52 S.W.3d 171, 178–79 (Tex. 2001)).

### 1. Common Law or Constitutional Standing Generally

A plaintiff has standing when she is personally aggrieved, regardless of whether she is acting with legal authority. *Data Foundry*, 620 S.W.3d at 696. Standing requires "a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Id.* (quoting *Heckman v. Williamson County*, 369 S.W.3d 137, 154 (Tex. 2012)). As the supreme court has repeatedly recognized, a plaintiff does not lack standing simply because some other legal principle may prevent her from prevailing on the merits; instead, a plaintiff lacks standing if her "claim of injury is too slight for a court to afford redress." *Id.* (quoting *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008)). Stated differently, the threshold inquiry into standing "in no way depends on the merits of the [plaintiff's] contention that particular conduct is illegal." *Id.* (quoting *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7 (Tex. 2011)).

When reviewing a challenge to standing, the supreme court has adopted the analysis adopted by the United States Supreme Court for federal Article III standing as set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130 (1992). *Id.* (citing *Heckman*, 369 S.W.3d at 154–55). "To maintain standing, a plaintiff must show: (1) an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's

challenged action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (citing *Lujan*, 504 U.S. at 560–61, 112 S. Ct. at 2137).

An injury is "particularized" for standing purposes if it "affect[s] the plaintiff in a personal and individual way." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 1548, (2016)). A "generalized grievance" that is equally available to the public at large is constitutionally insufficient to show a particularized injury. *Andrade*, 345 S.W.3d at 7 (citing *Lujan*, 504 U.S. at 573–74, 112 S. Ct. at 2143 (holding that a citizen's raising "only a generally available grievance about government— claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy")). "The bar is based not on the number of people affected—a grievance is not generalized merely because it is suffered by large numbers of people." *Id.* "Instead, the proper inquiry is whether the plaintiffs sue solely as citizens who insist that the government follow the law." *Id.* at 8.

"Generally, a citizen lacks standing to bring a lawsuit challenging the lawfulness of governmental acts." *Id.* at 7 (citing *Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001)). The rationale for this general bar to citizen standing is that "[g]overnments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under

13

judicial review." *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555 (quoting *Osborne v. Keith*, 177 S.W.2d 198, 200 (Tex. 1944)). "Unless standing is conferred by statute, a plaintiff must show that he has suffered a particularized injury distinct from the general public." *Andrade v. Venable*, 372 S.W.3d 134, 137 (Tex. 2012). "This bar against generalized grievances applies to suits brought by citizens as voters." *Id.*

For example, in *Brown*, the supreme court held that, absent a particularized injury not "shared by all living Houstonians who were among the 198,563 electors who [successfully] voted against [a] proposed ordinance" prohibiting discrimination on the basis of sexual orientation, the plaintiff voter and citizen lacked standing to seek an injunction against the defendant mayor's executive order forbidding substantially the same type of discrimination. 53 S.W.3d at 302–04; *see also City of San Antonio v. Stumberg*, 7 S.W. 754, 755 (Tex. 1888) (holding that "no action lies to restrain an interference with a mere public right, at the suit of an individual who has not suffered or is not threatened with some damage peculiar to himself"). In so holding, the court observed that "[n]o Texas court has ever recognized that a plaintiff's status as a voter, without more, confers standing to challenge the lawfulness of government acts." *Brown*, 53 S.W.3d at 302. Instead, the court noted, "Our decisions have always required a plaintiff to allege some injury distinct from that sustained by the public at large." *Id.*

Subsequently, in *NAACP of Austin*, the supreme court held that plaintiff citizens and voters challenging the use of electronic voting systems for Travis County

14

elections lacked standing because their allegations that such systems (1) compromised their right to a secret ballot, (2) were vulnerable to hacking and subject to manipulation, and (3) created no contemporaneous paper record for checking the accuracy of their results by recount, even if true, amounted only "to a generalized grievance shared in substantially equal measure by all or a large class of citizens." 345 S.W.3d at 15–18. Given the absence of a "concrete, particularized harm" distinct from the public at large, the court rendered judgment dismissing the case for want of subject matter jurisdiction. *Id.* at 18.

In *Ramsey*, we similarly concluded that plaintiff citizens and voters lacked standing to challenge the electronic voting system employed by Parker County to conduct its elections because their allegations, broadly speaking—"that electronic voting systems may be subject to attack by cybercriminals or hostile foreign actors who might wish to manipulate the outcome of elections and that this vulnerability creates a risk that [their] votes might not be counted properly"—failed to state a concrete and particularized injury; instead, their allegations raised merely a generalized grievance indistinguishable from the public at large. 2023 WL 3645468, at *1–4. Thereafter, three of our sister courts of appeals agreed with our standing analysis in rejecting similar challenges to electronic voting systems by plaintiff citizens and voters in their districts. *See Harvey v. Henry*, No. 14-23-00280-CV, 2024 WL 3875931, at *4–5 (Tex. App.—Houston [14th Dist.] Aug. 20, 2024, no pet.) (mem. op.); *Jones v. Stinson*, No. 05-22-01098-CV, 2023 WL 8946172, at *4 (Tex. App.—Dallas Dec. 28, 2023, no

pet.) (mem. op.); *Vieira v. Hudman*, No. 14-22-00678-CV, 2023 WL 5623481, at *4 (Tex. App.—Houston [14th Dist.] Aug. 31, 2023, no pet) (mem. op.).

Critically, none of these decisions, including *NAACP of Austin* and *Ramsey*, involved an election contest, standing for which is solely a creation of statute. Accordingly, we must look to the language of Section 233.002 to determine whether plaintiff citizens and voters may initiate and maintain contests challenging the election results of measures such as the county transportation bond in question here.[4]

## 2. Statutory Standing and Election Contests Specifically

When the legislature has conferred standing by statute, the above-referenced common law rules governing standing do not apply. *See Everett*, 178 S.W.3d at 850 (citing *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984)). Stated differently, "the legislature may exempt litigants from the common law injury requirement, making the statute itself the proper analytical framework to determine standing." *Hernandez v.*

---

[4]We observe that electronic voting systems in Texas have been the subject of similar challenges in federal court—at least one of which involved Judge Eads as a defendant (*Eubanks*), and all of which resulted in the rejection of Article III standing for plaintiff citizens and voters in non-election contest cases on the grounds of the generalized grievance bar. *See Raskin v. Jenkins*, No. 23-10960, 2024 WL 3508051, at *1–2 (5th Cir. July 23, 2024) (not designated for publication) (holding that complaint that use of uncertified or unaccredited electronic voting system in county election invalidated or "illegalized" plaintiff's vote was "generalized grievance" common to all county voters); *Eubanks v. Nelson*, No. 23-10936, 2024 WL 1434449, at *1–2 (5th Cir. Apr. 3, 2024) (not designated for publication), *cert. denied*, 145 S. Ct. 441 (2024); *Lutostanski v. Brown*, 88 F.4th 582, 585–87 (5th Cir. 2023) (same). Although Judge Eads urges us to consider the federal Article III standing analysis in conducting our review, he does not argue that any of these decisions raise stare decisis, res judicata, or issue preclusion issues.

*Truck Ins. Exch.*, 553 S.W.3d 689, 698 (Tex. App.—Fort Worth 2018, pets. denied); *Everett*, 178 S.W.3d at 851 ("When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis."); *In re Sullivan*, 157 S.W.3d 911, 915 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding [mand. denied]) (observing that, although standing is a constitutional prerequisite to suit in both federal and state court, "the judge-made criteria regarding standing do not apply when the Texas Legislature has conferred standing through a statute.").

Under such circumstances, we analyze the construction of the relevant statute to determine "upon whom the Texas Legislature conferred standing and whether the claimant in question falls in that category." *Old Am. Ins. Co. v. Lincoln Factoring, LLC*, 571 S.W.3d 271, 280 (Tex. App.—Fort Worth 2018, no pet.) (quoting *Sullivan*, 157 S.W.3d at 915). In so doing, we review the trial court's interpretation of the conferring statute de novo; our primary objective is to determine and give effect to the legislature's intent. *In re Russell*, 321 S.W.3d 846, 856 (Tex. App.—Fort Worth 2010, orig. proceeding [mand. denied]). "If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words." *Id.* (citing *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997)); *see* Tex. Gov't Code Ann. § 311.011 (setting forth rules for interpreting words and phrases used in codified statutes).

Ultimately, the plaintiff bears the burden of pleading and establishing her standing within the parameters of the language used in the conferring statute. *See In re*

17

*H.L.*, 613 S.W.3d 722, 724 (Tex. App.—Fort Worth 2020, no pet.); *Lincoln Factoring*, 571 S.W.3d at 280; *Hernandez*, 553 S.W.3d at 698. If the plaintiff fails to do so, dismissal for want of subject matter jurisdiction is the only recourse. *H.L.*, 613 S.W.3d at 724.

We may not, however, interpret the conferring statute to lower the standard for standing below the common-law or constitutional threshold by enlarging the jurisdiction of Texas courts beyond that conferred by constitutional authority. *See Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 582 n.83 (Tex. 2013); *see In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 462 (Tex. 2011) (orig. proceeding) ("If the grant of jurisdiction or the relief authorized in the statute exceeds the limits of Article V, Section 3(a), then we simply exercise as much jurisdiction over the case as the Constitution allows . . . ."); *Gibson v. Templeton*, 62 Tex. 555, 556 (1884) ("The legislature has no power to confer upon the district court a jurisdiction not granted by the constitution."). For example, in *Scott v. Board of Adjustment*, the supreme court recognized that the legislature may "[w]ithin constitutional bounds . . . grant a right to a citizen or to a taxpayer to bring an action against a public body . . . without proof of particular or pecuniary damage peculiar to the person bringing the suit." 405 S.W.2d 55, 56 (Tex. 1966) (holding taxpayers had standing to bring injunction proceeding against city and other entities); *see Spence v. Fenchler*, 180 S.W. 597, 609 (Tex. 1915) (concluding plaintiff did not have to show particular interest or damage when statute authorized "any citizen" to bring action to enjoin operation of bawdyhouse). *But see*

18

*Grossman v. Wolfe*, 578 S.W.3d 250, 257 & n.4 (Tex. App.—Austin 2019, pet. denied) (relying on *Scott* and *Spence* to conclude that citizen had standing without a concrete, particularized injury under Section 191.173(a) of the Texas Antiquities Code, *see* Tex. Nat. Res. Code Ann. §§ 191.001–.191.074 but questioning their continued precedential status by noting that the supreme court has adopted the federal Article III standing analysis in *Lujan* which requires a concrete, particularized injury "regardless of an express statutory-standing provision" (citing *Lujan*, 504 U.S. at 573–74, 112 S. Ct. at 2143)).

Indeed, in *Nelson v. Eubanks*, the Fifteenth Court of Appeals recently held that Section 233.002 could not enlarge the constitutional authority of the district courts to adjudicate election contests by exempting "qualified voters" from the constitutional imperative of a concrete, particularized injury distinct from the public at large. No. 15-24-00037-CV, 2024 WL 4886621, at *4 (Tex. App.—Austin [15th Dist.] Nov. 26, 2024, pet. filed) (mem. op.) ("While the legislature may confer standing by statute, it may not set a 'lower standard' than 'that set by the general doctrine of standing,' because 'courts' constitutional jurisdiction cannot be enlarged by statute.'" (quoting *Norwood*, 418 S.W.3d at 582 n.83)). *But see In re Morris*, 663 S.W.3d 589, 598 & n.48 (Tex. 2023) (orig. proceeding) (observing that, although a member of the public ordinarily cannot demonstrate a pre-election injury distinct from the general public sufficient to obtain modification of ballot language, "qualified voters" possess standing pursuant to Section 233.002 to challenge the election's results asserting

19

defective ballot language); *Dacus v. Parker*, 466 S.W.3d 820, 822 & n.2 (Tex. 2015) (observing that it was not disputed that, as registered, qualified voters of Harris County, the contestants possessed standing pursuant to Section 233.002 to file an election contest seeking (a) a declaration that a ballot proposition for proposed city charter amendment was "illegal and invalid as a matter of law" and (b) a determination that the narrow adoption of the amendment was invalid). Relying on the analysis of *Ramsey* and its progeny, the Fifteenth Court of Appeals concluded that the plaintiffs lacked standing to contest the results of a statewide election approving thirteen constitutional amendments on the grounds that the electronic voting systems employed were not properly certified by the Secretary of State. *Nelson*, 2024 WL 4886621, at *1, *4 & n.13. Critically, however, the court did not actually consider whether the Texas constitution authorized such standing distinct and apart from federal constitutional imperatives—an issue decided by the Texas Supreme Court over eight decades ago.

In *De Shazo v. Webb*, the supreme court expressly held that an amendment to Article V, Section 8 of the Texas constitution—by expressly conferring jurisdiction to adjudicate "contested elections" upon district courts—authorized the legislature to grant standing or "capacity" to citizen contestants, including residents and qualified voters, without a showing of a justiciable interest in the outcome of the election, i.e., a concrete, particularized injury distinct from the public at large. 113 S.W.2d 519, 520

(Tex. 1938) (answering certified question from the Eleventh Court of Appeals).[5] In so holding, the court acknowledged that until the ratification of the amendment in 1891, *see* Tex. Const. art. V, § 8 (amended 1891, 1973, 1985), it had consistently held that an election contest was not a suit, complaint. or plea subject to the original jurisdiction of the district courts. *De Shazo*, 113 S.W.2d at 521–22 ("An examination of section 8 of article 5 of our Constitution, as it existed prior to 1891, will disclose that it contained no express provision giving the district court jurisdiction of contested elections. Such jurisdiction, however, was expressly conferred by amendment adopted in that year."); *see Gibson*, 62 Tex. at 556 ("[A] proceeding to contest an election is not a suit, complaint or plea within the meaning of the constitution."). With the amendment, however, the court held that the legislature had the constitutional authority to confer standing by statute upon "any resident of such county, precinct, city, town or village, or any number of such residents" to contest the validity of the underlying school district consolidation election, including six of the contestants who identified themselves as "resident citizens, property taxpayers, and qualified voters" of one of the counties and school districts so consolidated. *De Shazo*, 113 S.W.2d at 520–23.

---

[5]Under former Rule of Civil Procedure 462, now repealed, when an intermediate appellate court's decision conflicted with an opinion of the Texas Supreme Court on a question of law, the intermediate court had a duty to "transmit or certify the question" to the supreme court for adjudication. *Saigh v. Monteith*, 215 S.W.2d 610, 614–15 (Tex. 1948) (Smedley, J., dissenting) (describing procedure). The rule vested the supreme court with jurisdiction to answer the question so certified. *Id.*

As to whether these contestants, as argued by the contestee, had to show a justiciable interest in the election outcome beyond their mere status as citizen residents and qualified voters, the supreme court first agreed with our sister court in Eastland that "the Legislature has the power to enact any law that is not in conflict with the Constitution of this state or of the United States, or valid laws enacted by the latter." *Id.* at 523. The court further observed, "No contention is made by contestee that the above statutes involve any federal question." *Id.*

The court then explained that the legislative nature of an election contest foreclosed the need for a justiciable interest to confer standing:

> The jurisdiction conferred upon the district courts to hear and determine "contested elections" is legislative in its nature. We have already demonstrated this. In other words, we have already demonstrated that the power and jurisdiction to hear and determine a contested election action is the power and jurisdiction to exercise a legislative function, and that it is not a civil suit. . . .
>
> . . . If a justiciable interest is required to enable the contestant to maintain this action, in the sense that such interest would be required to maintain an ordinary civil suit, then this contention must be sustained. When we consider, however, that this is not a civil suit, and that the statute confers the power or capacity on these contestants to maintain this legislative action, and when we are unable to put our finger on a single constitutional provision which prohibits the conferring of such power, we are compelled to overrule this contention.

*Id.*

Finally, the supreme court explained the public policy underlying this lower threshold for citizen contestant standing:

22

The very purpose of the 1891 amendment to section 8 of article 5 of our Constitution was to aid in the preservation and enforcement of the purity of the conduct of elections. If this cannot be done, then one of the very foundations of our system of government may be seriously impaired. A constitutional provision which aids in accomplishing a purpose so important and so necessary should be liberally construed, to the end that it may, within reasonable bounds, accomplish the same. The capacity conferred by [the statutes in question] on certain parties to contest elections, other than for the purpose of electing officers, is not based on any individual property right; but upon the theory that a remedy should be furnished, legislative in its nature, whereby fraudulent elections may be contested, and the wrong thereby inflicted righted.

*Id.* at 524 (citing *Massay v. Studer*, 11 S.W.2d 227, 228 (Tex. App.—Amarillo 1928, no writ) (observing that the legislature, "recognizing the fact that a wrong might be perpetrated, for which there was no remedy," enacted the same statute "in order that a remedy might be furnished whereby fraudulent elections . . . might be contested")). Stated differently, because the legislature understood that the absence of a justiciable interest—i.e., the concrete, particularized injury required for civil suits—in individual citizens and voters left the public at large without remedy for fraudulent elections, it conferred standing upon them by statute to contest such elections without demonstrating such a justiciable interest. *See id.*

Finally, before certifying its questions to the supreme court, our sister court in Eastland had described the standing conundrum confronted by the legislature thusly:

One of the brightest legal minds that has made contribution to the jurisprudence of this state (in the opinion of this writer) had occasion to express the views of his court on the nature of election contests and who was authorized to bring such actions, as follows: "Under the present law, passed in view of the constitutional amendment, rules of procedure are provided, and the proceedings are cognizable in the district courts. But it

23

does not follow that the proceedings have lost their distinctive character as political proceedings rather than *suits*. The amendment to the Constitution having been adopted to supply the want of a judicial tribunal in which such controversies might be heard, and having been prepared and adopted in view of the decisions in which the proceeding had been classified, the term must be held to have been used according to its accepted and adjudicated meaning. The action retains its nature as first defined. It may be brought in cases where neither an office nor its value is in issue. *The plaintiff need have no greater interest than that of any other voter.* The defendant may be a mere nominal party, without interest and without concern as to the result. ["]The absolute necessity for the speedy determination of such controversies has long been recognized." *Robinson & Watson v. Wingate*, [80 S.W. 1067, 1070 (Tex. App.—Galveston), *writ ref'd*, 83 S.W.182 (Tex. 1904)].

On application for writ of error, the Supreme Court in a short opinion by Judge Williams affirmed the judgment of the Court of Civil Appeals, among other things, saying: "We are satisfied, both upon principle and authority, of the correctness of the views which prevailed in the Court of Civil Appeals, and therefore refuse the application for writ of error." *Robinson & Watson*, 83 S.W. [at] 182 . . . . Here was full recognition of the right of a *voter* to contest a local option election and thus prevent or sustain, as the case may be, the coming into existence of a governmental status, and, at the same time, the denial of the existence of any legal right to complain of the consequences of such status after it had come into existence.

*De Shazo v. Webb*, 109 S.W.2d 264, 269–70 (Tex. App.—Eastland 1937, no writ) (emphasis added), *certified question answered*, 113 S.W.2d 519 (Tex. 1938). In other words, there is no doubt that the issue of whether a citizen contestant required a concrete, particularized injury to maintain an election contest was before the supreme court in *De Shazo*—and the court confirmed that no such injury was a prerequisite for

standing lest the public at large lose a remedy for fraudulent elections.[6] *See also Scott*, 405 S.W.2d at 56 ("Within constitutional bounds, the Legislature may grant a right to a citizen or to a taxpayer to bring an action against a public body or a right of review on behalf of the public without proof of particular or pecuniary damage peculiar to the person bringing the suit."); Louis L. Jaffe, *Standing to Secure Judicial Review: Public Actions*, 74 Harv. L. Rev. 1265, 1296–98 (1961) (cited in *Scott*'s analysis; pointing to election law as an area enforced by conferring standing on citizen voters without the need for a particular injury—such suits involving the fundamental civil liberty of the right to vote; and noting, "But the courts have gone much beyond protection of the individual voter. They have intervened at the suit of the citizen-voter to enforce a considerable part of the constitutional and statutory code governing the election process.").

As an intermediate appellate court, we are bound to follow Texas Supreme Court authority. *See, e.g.*, *Scoresby v. Santillan*, 287 S.W.3d 319, 324 (Tex. App.—Fort Worth 2009), *aff'd*, 346 S.W.3d 546 (Tex. 2011). As that court has stated, "It is not the function of a court of appeals to abrogate or modify established precedent[; t]hat function lies solely with" the Texas Supreme Court. *Lubbock County, Texas v. Trammel's*

---

[6]In so holding, the supreme court overruled by implication dicta in our own standing analysis to the contrary, issued one month before. *See Tate v. Farmer*, 112 S.W.2d 782, 784 (Tex. App.—Fort Worth 1938, no writ) ("Since, by [the relevant statute], the trustees of a common school district are made a body politic and corporate, with power to sue and be sued, the two trustees who constituted a majority of the board had authority to institute the suit, even though it should be said that others who joined with them as taxpayers and citizens did not have the right to contest the election for lack of justiciable interest therein, separate from the interest of the public . . . .").

*Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002). Given the continued authority of *De Shazo*,[7] the unambiguous language of Section 233.002, and the undisputed status of Appellants as "qualified voters" in Denton County, we hold that Appellants need not demonstrate a concrete, particularized injury distinct from the public at large to maintain their standing to contest the transportation-bond election; the trial court erred in so holding. *See Nelson v. True Tex.*, 685 S.W.3d 187, 195–96 (Tex. App.—Amarillo 2024, no pet.) (considering associational standing of qualified voters under Section 233.002 to contest the outcome of a statewide constitutional amendment election without discussing any necessity for a concrete, particularized injury distinct from the public at large).

### 3. The Necessity of a Statutory Contestee for Jurisdiction

Finally, Judge Eads finally argues that, since he had no authority or responsibility for certifying the electronic voting systems used in the transportation-

---

[7]Although Article V, Section 8 was amended in 1985 to remove the phrase "contested elections" from its general jurisdictional purview as part of the legislature's codification of the Election Code, *see* Tex. Const. art. V, § 8 (amended 1985), we have found no authority that suggests any legislative intent to divest the district courts of jurisdiction to hear such contests. *See In re Oncor Elec. Delivery Co.*, 630 S.W.3d 40, 44 (Tex. 2021) (orig. proceeding) ("A district court has subject-matter jurisdiction to resolve disputes unless the Legislature divests it of that jurisdiction."). Indeed, forty years of election-contest practice in the district courts strongly negates any such legislative intent. *See Morrow v. Corbin*, 62 S.W.2d 641, 651 (Tex. 1933) (upholding constitutionality of certified question practice, despite characterizing its constitutional basis as "elusive," because exercised for some forty years without challenge). And finding such legislative intent would deprive the public in general of the very means by which the legislature sought to provide a remedy for fraudulent elections, as identified by *De Shazo*.

bond election, the trial court properly dismissed Appellants' election contest for want of jurisdiction. We disagree.

The Election Code clearly places the responsibility to ensure proper certification squarely on the Secretary of State, not county officials. *See* Tex. Elec. Code Ann. § 122.031(a) ("Before a voting system or voting system equipment may be used in an election, the system and a unit of the equipment must be approved by the secretary of state as provided by this subchapter."), § 123.035(a) ("A contract for the acquisition of voting system equipment . . . must be . . . approved by the secretary of state as to compliance of the voting system and voting system equipment with the applicable requirements."). Nevertheless, Section 233.003 expressly identifies the presiding officer of the final canvassing authority as an appropriate contestee for contesting elections on measures. *Id.* § 233.003(a)(1). Indeed, any failure on the part of Appellants to serve Judge Eads as the appropriate contestee would have failed to invoke the trial court's jurisdiction to adjudicate their election contest. *Mendez v. City of Amarillo*, No. 07-07-00207-CV, 2008 WL 2582987, at *1–2 (Tex. App.—Amarillo June 30, 2008, no pet.) (mem. op.) (holding that the contestant's failure to file election contest against a contestee prescribed by Section 233.003 deprived the district court of jurisdiction to hear his contest); *see Tarrant Cnty. Republican Party v. Rector*, No. 07-24-00240-CV, 2024 WL 4536972, at *1 n.3 (Tex. App.—Amarillo Oct. 21, 2024, pet. filed) (mem. op.) (following *Mendez*, holding contestant's failure to name the appropriate contestee prescribed by Section 232.003(a) deprived district court of

27

jurisdiction to try his election contest). We decline to hold that, by filing their election contest against Judge Eads as the presiding officer of the final canvassing authority for the transportation-bond election, as expressly contemplated by Section 233.003(a)(1), Appellants thereby deprived the trial court of subject matter jurisdiction. To the extent the trial court so held, it was error.[8]

## III. Conclusion

"A court can no more surrender or refuse to exercise a jurisdiction conferred on it by law than can it acquire a jurisdiction not given by law." *Darnall v. Lyon*, 22 S.W. 304, 307 (Tex. 1893) (Stayton, C.J., concurring). Because we conclude that the trial court erroneously interpreted Section 233.002 to require Appellants to demonstrate their standing to contest the results of the transportation-bond election by not merely establishing their status as qualified voters in Denton County, but also by showing a concrete, particularized injury distinct from the public at large, we reverse its order of dismissal for want of subject matter jurisdiction and remand for a proceeding on the merits consistent with this opinion.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: February 26, 2025

---

[8]To the extent Judge Eads argues other jurisdictional grounds, because the absence of standing was the only basis for the trial court's order of dismissal, we must limit our review to that ruling and forego addressing any merits-based grounds for dismissal. *See Data Foundry*, 620 S.W.3d at 699; *Ramsey*, 2023 WL 3645468, at *2.

CERTIFICATE OF SERVICE

I certify that on February 27, 2025, a copy of the above styled motion was filed and served via the EFSP (efiletexas.gov) for the Court of Appeals for the Fifteenth District:

ATTORNEYS FOR DEFENDANT

Kimberly Gdula- Chief
Texas Bar No. 24052209
Kimberly.gdula@oag.texas.gov

William D. Wassdorf
Texas Bar No. 24103022
will.wassdorf@oag.texas.gov

Stephanie A Criscione
Texas Bar No. 24109768
stephanie.criscione@oag.texas.gov

Assistant Attorneys General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capital Station
Austin, TX 78711-2548
512-936-1675 Phone
512-302-0667 Fax

Respectfully Submitted,

*s/ Michelle Piqué*          *s/ Sharon Jorolan*          *s/ Shannon Huggins*
MICHELLE PIQUÉ      SHARON JOROLAN      SHANNON HUGGINS
                                                                    PO Box 533
                                                                    Snook, TX 77878
                                                                                *Pro Se Appellees*

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 97897093
Filing Code Description: Motion
Filing Description: Judicial Notice
Status as of 2/28/2025 7:31 AM CST

Associated Case Party: Shannon Huggins

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Shannon Huggins | | freetx1876@gmail.com | 2/27/2025 5:24:00 PM | SENT |

Associated Case Party: Michelle Pique

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michelle Pique | | piquepink@gmail.com | 2/27/2025 5:24:00 PM | SENT |

Associated Case Party: Sharon Jorolan

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Sharon Jorolan | | sjorolan@outlook.com | 2/27/2025 5:24:00 PM | SENT |

Associated Case Party: Jane Nelson

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| William Wassdorf | | will.wassdorf@oag.texas.gov | 2/27/2025 5:24:00 PM | SENT |
| Stephanie Criscione | | stephanie.criscione@oag.texas.gov | 2/27/2025 5:24:00 PM | SENT |
| Laura Hendrix | | laura.hendrix@oag.texas.gov | 2/27/2025 5:24:00 PM | SENT |
| Carrisa Stiles | | carrisa.stiles@oag.texas.gov | 2/27/2025 5:24:00 PM | ERROR |

Associated Case Party: Jarrett Woodward

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jarrett Woodward | | digging4au@protonmail.com | 2/27/2025 5:24:00 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 97897093
Filing Code Description: Motion
Filing Description: Judicial Notice
Status as of 2/28/2025 7:31 AM CST

Associated Case Party: Heather Couchman

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Heather Couchman | | HeatherNTX@protonmail.com | 2/27/2025 5:24:00 PM | SENT |

Associated Case Party: Tommie Dickinson

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Tommie Dickinson | | Tjdickinson316@gmail.com | 2/27/2025 5:24:00 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Elena Eydelman-Natividad | | elena.eydelman-natividad@oag.texas.gov | 2/27/2025 5:24:00 PM | SENT |

Associated Case Party: Travis Eubanks

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Travis Eubanks | | travis.eubanks@gmail.com | 2/27/2025 5:24:00 PM | SENT |

Associated Case Party: Madelon Highsmith

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Madelon Highsmith | | mhighsmith@mac.com | 2/27/2025 5:24:00 PM | SENT |

Associated Case Party: Lars Kuslich

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 97897093
Filing Code Description: Motion
Filing Description: Judicial Notice
Status as of 2/28/2025 7:31 AM CST

Associated Case Party: Lars Kuslich

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Lars Kuslich | | blanket113@protonmail.com | 2/27/2025 5:24:00 PM | SENT |

Associated Case Party: Amber Cloy

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amber Cloy | | Amberb2222@yahoo.com | 2/27/2025 5:24:00 PM | SENT |

Associated Case Party: Traci Jones

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Traci Jones | | jones_traci24@hotmail.com | 2/27/2025 5:24:00 PM | SENT |

Associated Case Party: Sharon Cotton

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Sharon Cotton | | sharon.cotton53@icloud.com | 2/27/2025 5:24:00 PM | SENT |

Associated Case Party: Amanda Eubanks

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amanda Eubanks | | amanda.eubanks710@gmail.com | 2/27/2025 5:24:00 PM | SENT |